IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RODWELL POOLE, | : |
| Plaintiff, | : |
| vs. | :  CIVIL ACTION 07-0749-KD-C |
| DAVID STREIFF, | : |
| Defendants. | |

REPORT AND RECOMMENDATION

Plaintiff, a federal detainee proceeding pro se and in forma pauperis filed a Complaint under Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).[1]  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the Motion for Summary Judgment of Defendant, David Streiff, Warden of the Perry County Correctional Center[2]  (Doc. 10); and Plaintiff's opposition thereto (Doc. 17).  For the

---

[1] Although Plaintiff asserts his claims under 42 U.S.C. § 1983, the Court construes his Complaint, which alleges constitutional violations by Defendants acting under color of federal law, as an action pursuant to Bivens.

[2] Two additional Defendants, Tony Buford and Perry County Correctional Officer Sgt. A. Conner, have not yet been served in this action.  However, Plaintiff's claims against Defendants Buford and Conner fail to state a claim and are due to be dismissed.  Specifically, Plaintiff has failed to allege any personal involvement by Buford, or any causal connection between this Defendant and the complained of conduct.  See Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) ("Supervisory liability 'occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'").  As to Defendant Conner, as she is an employee of a

reasons stated below, it is recommended that the Motion for Summary Judgment of Defendant be granted and that Plaintiff's action against all Defendants be dismissed with prejudice.[3]

## I. SUMMARY OF FACTUAL ALLEGATIONS

1. From its review of the record, the Court summarizes the allegations that are material to the issues addressed in this Report and Recommendation. Plaintiff is a citizen and native of Guyana, who has been detained by the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE").[4] Plaintiff is currently incarcerated at the Perry County Correctional Center[5] ("PCCC"), in Uniontown, Alabama.

2. On August 29, 2007, Plaintiff claims that David Streiff, the PCCC Warden, placed Plaintiff under arrest, and during that process, violated Plaintiff's due process

---

private corporation working under color of federal law, Plaintiff is foreclosed from bringing a claim of constitutional violations against her pursuant to Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 63 (2001), and Alba v. Montford, 517 F.3d 1249 (11th Cir. 2008).

[3] On April 22, 2008, Plaintiff filed a Motion for Leave to Amend his Complaint. (Doc. 15). On May 7, 2008, Defendant filed an Objection to Plaintiff's Motion to Amend. (Doc. 17). Plaintiff's motion is now moot, as the Court has determined that this action is due to be dismissed.

[4] Poole v. Gonzales, Civil Action 07-00127, S.D.A.L. July 18, 2007.

[5] The Perry County Correctional Center is a privately owned detention facility operated by Louisiana Correction Services Corporation. (Doc. 17, Ex. I, Affidavit of David Streiff). The Perry County Correctional Center houses ICE detainees pursuant to a contract with the Department of Homeland Security/Immigration and Customs Enforcement. (Id.).

rights. According to Plaintiff, Warden Streiff ordered Plaintiff into his office at the PCCC, and presented his badge to Plaintiff, advising him that he was also a Marion police officer and that Plaintiff was under arrest. (Doc. 4, Amended Complaint). Plaintiff alleges that Defendant Streiff then read Plaintiff his Miranda rights, but denied him a phone call, an arraignment, or any opportunity to be heard by a judge. Instead of receiving "due process," Plaintiff contends that he was sent to solitary confinement, where he was kept for 60 days. (Id. at 4-5, 8-9).

3. Plaintiff also names as a Defendant, Tony Buford, who Plaintiff identifies as the Marion Chief of Police, alleging only that Buford is responsible for the wrongful act of Streiff because Streiff was acting on behalf of the police department, instead of the PCCC. (Id. at 5). Plaintiff further complains that Defendant Sgt. A. Conner, a PCCC officer, denied him "equal treatment" when she advised him that she could not "do anything" about his food items allegedly being stored in a closet with "mice droppings."[6] (Id.). In his "Motion for Summary Judgment and Answer to Special Report," Plaintiff also complains of his general unhappiness with the conditions of his environment, referencing a lack of personal safety and a lack of privacy. (Doc. 18).

4. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

---

[6]Plaintiff claims that personal property (food items) belonging to him were improperly stored in a closet where such property was damaged by rodents. (Doc. 4). Plaintiff claims that this property was valued at $130, and acknowledges that he refused to accept Defendant's $50 reimbursement check. (Doc. 10, Attachment 1, Special Report at 3; doc. 18).

(Doc. 4 at 7, 9-10).

## II.  PROCEDURAL ASPECTS OF THE CASE

1.  On October 17, 2007, Plaintiff filed the present <u>Bivens</u> action against Defendants Streiff, Buford, and Conner complaining of his conditions of confinement, and lack of due process while incarcerated at the PCCC.  (Doc. 4).

2.  On February 21, 2008, the Court ordered service of the Complaint on Defendant Streiff.[7]  (Doc. 6).  Defendant Streiff filed his Answer and Special Report on April 10, 2008.  (Doc. 10).

3.  On April 11, 2008, the Court converted the Defendant's Answer to a Motion for Summary Judgment.  (Doc. 13).  On April 22, 2008, Plaintiff filed a Motion to Amend his Complaint (Doc. 15), and on May 7, 2008, Defendant Streiff filed an Objection thereto.  (Doc. 17).  On May 13, 2008, Plaintiff filed a response to Defendant's Motion for Summary Judgment (Doc. 18), and on May 19, 2008, Defendant filed a brief in support of his Motion for Summary Judgment.

## III.  SUMMARY JUDGMENT STANDARD

1. In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The <u>Federal Rules of Civil Procedure</u> grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for

---

[7]As noted previously, Defendants Buford and Conner have yet to be served in this matter.  A review of the pleadings indicate that Plaintiff has failed to state a claim against either of these Defendants.  See footnote 2 above.

summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

2. The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989).

3. However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27.

4. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

IV. DISCUSSION

1. The PCCC is a privately-owned detention facility, operated by Louisiana Corrections Service Corporation, which houses ICE detainees pursuant to a contract with the Department of Homeland Security/Immigration and Customs Enforcement. (Doc. 17, Exhibit I, Affidavit of David Streiff). Defendant Streiff is the Warden of the PCCC, and Defendant Conner is an officer at the PCCC. (Doc. 4). Defendant Tony Buford is, according to Plaintiff, the Marion Chief of Police. (Id.).

2. Although Plaintiff seeks relief under 42 U.S.C. § 1983,[8] the Court interprets his Complaint as asserting a claim under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). "Though more limited in some respects..., a Bivens action is the federal analog to suits brought against state officials under [§ 1983]." Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006). "Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." Id. (citations omitted).

    A. Plaintiff's action against Defendants Streiff and Conner.

3. Plaintiff's action against Defendants Streiff and Conner is governed by two cases: Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 63 (2001), and Alba v. Montford, 517 F.3d 1249 (11th Cir. 2008). On the authority of these cases, Plaintiff's

---

[8] "[Section] 1983 provides a right of action to remedy unconstitutional state, not federal, conduct." Alba v. Montford, 517 F.3d 1249, 1251 (11th Cir. 2008)

action against these Defendants is due to be dismissed.

     4. In <u>Malesko</u>, the United States Supreme Court refused to extend its holding in <u>Bivens</u> to imply a cause of action for damages against a private corporation alleged to have violated the plaintiff's constitutional rights.  <u>Id.</u>, 534 U.S. at 63.  The defendant, CSC, operated a halfway house for federal inmates pursuant to a contract with the Federal Bureau of Prisons.  The court recognized that, in <u>Bivens</u>, it had implied a private action for damages against federal officers alleged to have violated a citizen's constitutional rights because it had been concerned with "deterring the unconstitutional acts of individual [federal] officers."  <u>Id.</u> at 71.  The court refused, however, to "imply new substantive liabilities" against a private corporation acting under color of federal law where the plaintiff had "alternative remedies elsewhere."  <u>Id.</u> at 66.

     5. Furthermore, not only is Plaintiff barred from bringing suit against a private corporation acting under color of federal law pursuant to <u>Malesko</u>, the Eleventh Circuit recently determined that there could be no cause of action for damages against individual employees of a private corporation operating a prison pursuant to a contract with the Federal Bureau of Prisons.   <u>Alba v. Montford</u>, 517 F.3d at 1251.  In <u>Alba</u>, the plaintiff alleged that various prison employees, acting pursuant to company policy, refused to schedule necessary surgery to correct a serious medical condition from which he suffered.  The Eleventh Circuit held that, just as damages actions against a private corporation operating under a contract with the Federal Bureau of Prisons for alleged constitutional violations were foreclosed under <u>Bivens</u>, so too were such actions against the

corporation's employees.  Id.  The Eleventh Circuit noted that the Supreme Court had extended Bivens in limited circumstances "only 'to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by an individual officer's unconstitutional conduct.'"  Id. at 1254 (emphasis in original) (citations omitted).  The court concluded that, because Alba had access to adequate state remedies against the individuals employed by the private entity, an extension of Bivens to imply a cause of action was not justified.  Id. at 1255.  Just as in Alba, Plaintiff in the present action has adequate state tort remedies available to redress the harms alleged in his Complaint, including, but not limited to, negligence and wantonness.  Thus, Plaintiff's action against Defendants Streiff and Conner fails as a matter of law.

      6.  The Court notes that Plaintiff purports to be bringing this action against Defendant Warden Streiff, not only in his capacity as Warden but also in his capacity as a police officer for the "Marion Police Department."  However, the Court is unpersuaded by this argument.  While Defendant Streiff admits that he not only serves as the PCCC Warden, but also as a sheriff's deputy for Perry County, the evidence is clear that Streiff was not acting as a deputy, but was acting as Warden of the PCCC, at the time of his actions complained of by Plaintiff.

7. The record reflects that Plaintiff was brought from segregation[9] into Warden Streiff's office at the PCCC after Defendant found contraband in Plaintiff's cell. Among the items of contraband included a cell phone hidden inside of rolled up socks.[10] In Warden Streiff's office, Plaintiff was advised of this discovery, and also advised of his Miranda rights, which according to Warden Streiff is in keeping with the PCCC's internal disciplinary and investigation policies. (Doc. 10, Attachment 1, Special Report/Affidavit). While the record shows that Plaintiff was found "guilty" of an institutional disciplinary, there is no evidence that he was "arrested" as he claims. (Doc. 10, Ex. 4, Disciplinary Report). The Court notes that while Warden Streiff did inform Plaintiff that he also worked for the Perry County Sheriff's Department, Defendant was acting in his role as the PCCC Warden, and not for the sheriff's department. Advising Plaintiff of the contraband discovered in his cell and charging Plaintiff with a disciplinary

---

[9] It appears from the record that Plaintiff has been in and out of segregation on several occasions as a result of fighting. Defendant notes that Plaintiff is a "difficult detainee." (Doc. 10, Attachment 1). At the time of the complained of actions, it appears that Plaintiff was in segregation as a result of two infractions. One concerned Defendant's discovery of a letter which was apparently mailed out by Plaintiff but returned as undeliverable. A review of this letter, submitted by Defendant, reveals detailed instructions as to how to sneak contraband inside the PCCC, acknowledging in the letter that the specified method was how Plaintiff was able to get his cell phone inside the facility. (Doc. 10, Ex. 2). In the letter, Plaintiff advises an unknown civilian on how to transport tobacco into the facility, likening it to how "people hide guns in a Bible," and instructs the person to label the package as "legal mail." (Id.). Plaintiff was also in segregation as a result of an inappropriate relationship with a PCCC officer, who, according to Defendant, has since been terminated from her employment. (Doc. 10).

[10] Other items of contraband included 3 toilet bowl cleaners, 24 pills, 1 scan disk, 1 lock and 1 MP3 player. (Doc. 10, Ex. 4).

as a result were clearly actions taken by Streiff as the PCCC Warden.  Streiff further notes that as Plaintiff is an ICE detainee, any possible criminal prosecutions would have to be forwarded to the ICE for approval.  (Doc. 19, Brief in Support of Motion for Summary Judgment).

       8. Other courts addressing this issue have likewise held that a <u>Bivens</u> action is not available against an employee of a private corporation acting under color of federal law. <u>See</u> <u>Peoples v. CCA Detention Centers</u>, 422 F.3d 1090, 1108 (10th Cir. 2005), *aff'd by equally divided en banc panel*, 449 F.3d 1097 (2006) (holding that "federal prisoners have no implied right of action for damages against an employee of a privately operated prison under contract with the United States Marshals Service when state or federal law affords the prisoner an alternative cause of action for damages for the alleged injury"); <u>accord</u> <u>Holly v. Scott</u>, 434 F.3d 287, 296-97 (4th Cir. 2006); <u>see also</u> <u>Akinsuroju v. Corrections Corp. of America</u>, 2006 WL 2548075, 3 (S.D. Ga. 2006) ("this Court follows the lead of the Tenth and Fourth Circuits and declines to extend <u>Bivens</u>" to allow an action for damages against individual employees of a private corporation operating a federal prison).

      Therefore, Plaintiff's claims against Defendants Warden Streiff and Officer Conner fail as a matter of law.

    B.    <u>No Causal Connection With Defendant Buford</u>.

       9. Plaintiff has also named Tony Buford, identified by Plaintiff as the Marion Chief of Police, as a Defendant in this action.  (Doc. 4).  Plaintiff does not allege that this

Defendant personally participated in the alleged constitutional deprivations that he experienced at the PCCC. Rather, it appears that Plaintiff is proceeding against this Defendant on a theory of supervisory liability, based upon Plaintiff's assertions that Defendant Streiff was acting on behalf of the police department instead of the PCCC. The Court has already determined that the evidence clearly reflects that Defendant Streiff was acting in his capacity as Warden of the PCCC only. However, even if this were not the case, Plaintiff would still have failed to state a claim against Buford.

10. "It is well established in this circuit that supervisory officials are not liable under [Bivens] for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003) (citations omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Id. (citations omitted). Supervisory liability under Bivens or Section 1983

> "occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." Id. at 802 (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)); see also Greason v. Kemp, 891 F.2d 829, 836 (11th Cir. 1990) (explaining that a supervisor "can be held liable under [Bivens] when a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff, and his conduct was causally related to the constitutional violation committed by his subordinate") (citations and footnote omitted). A causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," id., or

11

> when the supervisor's improper "custom or policy . . . resulted in deliberate indifference to constitutional rights," Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991).  A causal connection can also be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. See Post v. City of Fort Lauderdale, 7 F.3d 1552, 1561 (11th Cir. 1993) (finding no supervisory liability in the absence of such an inference).

Dalrymple, 334 F.3d at 996; see also Braddy v. Florida Dept. of Labor and Employment Sec., 133 F.3d 797, 801-02 (11th Cir. 1998).

11. Because Plaintiff has failed to present any evidence that would establish a causal connection between any actions, omissions, or policies of Defendant Buford and the alleged constitutional violations in this case, Plaintiff's claim against Defendant Buford fails as a matter of law.

## V.  CONCLUSION

Based on the foregoing, it is recommended that Defendant's Motion for Summary Judgment (Doc. 10) be granted and that Plaintiff's action against all Defendants be dismissed with prejudice.  It is further recommended that Plaintiff's pending Motion to Amend his Complaint (Doc. 15) be denied as moot.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 29th day of May, 2008.

                                                                         s/WILLIAM E. CASSADY
                                                                         UNITED STATES MAGISTRATE JUDGE

MAGISTRATE JUDGE' S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.      **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(c); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

        A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

14